UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY DEE GRAY,

        Petitioner,

  vs.

D.L. RUNNELS, Warden,

        Respondent.

No. C 05-5394 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the writ should not be granted based on petitioner's cognizable claim for relief.  Thereafter, the court denied respondent's motion to dismiss.  Respondent then filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court.  Petitioner has filed a traverse.  For the reasons set out below, the petition is denied.

## BACKGROUND

On October 18, 1984, petitioner was charged with first degree murder in Alameda County Superior Court, and the district attorney sought the death penalty against him.  The charges were based on a murder-for-hire scheme between petitioner and his codefendant, Marylinn Joyce Cassidy, in which petitioner killed Cassidy's ex-husband.[1]  During the course of the trial, the trial court declared a mistrial because the prosecutor had withheld

---

[1] As the present petition only concerns whether petitioner's continued confinement constitutes a breach of the plea agreement, a detailed factual account of the underlying offense is not necessary.

evidence from the defense.  Prior to his retrial, the parties reached a plea agreement.  Pursuant to that agreement, in May 1990, petitioner pled guilty to second degree murder, and on August 31, 1990, the trial court sentenced him to a term of fifteen years to life in state prison.  Petitioner did not file any direct appeals.

On October 7, 1993, petitioner appeared at his first parole hearing, at which the Board of Prison Terms ("Board") found him unsuitable for parole.  Parole was denied at subsequent parole hearings in 1996 and 2001.  Beginning in September 2003, petitioner filed unsuccessful habeas petitions in all three levels of the California courts raising the same claim that petitioner raises herein.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but

2

"unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). In this case, the only reasoned state court decision is that of the Alameda County Superior Court denying petitioner's habeas petition. Resp. Ex. C.

**DISCUSSION**

As grounds for federal habeas relief, petitioner asserts that the denial of parole has caused him to receive greater punishment than promised to him under the plea agreement, and has effectively punished him for an offense more serious than that to which he pled guilty. He claims that this constitutes a breach of his plea agreement, in violation of his right to due process.

Fundamental fairness of due process requires that promises made during plea bargaining and analogous contexts be respected. *See Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985). That a petitioner is entitled to habeas relief if a prosecutor breaches a plea agreement is clearly established Supreme Court law within the meaning of the 28 U.S.C. § 2254(d)(1). *Gunn v. Ignacio*, 263 F.3d 965, 969-70 (9th Cir. 2001). A party breaches a plea bargain if it fails to live up to the promises it made under the agreement. *See Buckley v. Terhune*, 441 F.3d 688, 698 (9th Cir. 2006). If the government agrees to

3

1  make a certain recommendation to the sentencing court, it is bound by the agreement to
2  make that particular recommendation. *See United States v. Johnson*, 187 F.3d 1129, 1135
3  (9th Cir. 1999).
4      Here, the government only agreed that it would recommend a sentence of fifteen
5  years to life in state prison. Resp. Ex. 2 1; Ex. 7 at 5. It is undisputed that the government
6  made that recommendation, petitioner received that sentence. Petitioner's argument that
7  the Board is withholding a promised lesser punishment and punishing him for a greater
8  offense is without merit. Because petitioner is serving an indeterminate life sentence, he
9  may be lawfully incarcerated until the Board determines that he is suitable for parole. *See*
10 *Dannenberg*, 34 Cal. 4th at 1083-84 ("an inmate whose offense was so serious as to
11 warrant, at the outset, a maximum term of life in prison, may be denied parole during
12 whatever time the Board deems required for 'this individual' by 'consideration of the *public*
13 *safety.*'" (quoting Cal. Penal Code § 3041(b) (emphasis in original))). Petitioner has not
14 demonstrated that the Board's denial of parole violated the plea agreement.
15     Petitioner claims that the prosecutor, defense counsel, and the applicable parole
16 statutes and regulations made an "implied promise" in the plea agreement that petitioner
17 would be released on parole within six to ten years of his sentence, and that he would not
18 have pled guilty if such a "promise" had not been made. Petition at 9-10. These
19 contentions are directly refuted by the record of the plea hearing, however. *See Blackledge*
20 *v. Allison*, 431 U.S. 63, 73-74 (1977) ("defendant's statements on the record carry a strong
21 presumption of verity," and "constitute a formidable barrier in any subsequent collateral
22 proceedings"). At the hearing, defense counsel conducted voir dire of petitioner and told
23 him, "[Y]ou are contracting to go to state prison for the term of 15 years to life. Now that
24 doesn't mean you are contracting to get out of prison five years from now or ten years from
25 now or ever at all." Resp. Ex. 7 at 5. Defense counsel further informed petitioner that the
26 plea agreement did not promise that he would ever be released on parole:
27      When you plead to 15 years to life there is all sorts of stuff about
        matrixes and eligibility for parole and fixing the term and all that good stuff.
28

4

> All that stuff goes out the window, because the only promise that is being made to you right now is they drop the special circumstance; they drop the murder in the first degree; you plead to second degree murder; and you go 15 years to life.
>
> That means that the California Department of Corrections and the Parole Authority could set your term at 15 years. That means that they could set your term at 18 years or 19 years. Hey man, it also means that they could refuse to set a term at all.
>
> Now, you might have all sorts of legal remedies if they refuse to set the term at all. But all those legal remedies may not work.

*Id.* at 5-6. In addition, defense counsel warned petitioner that by agreeing to accept a sentence of 15 years to life that "you are also taking the risk" that "you are going to end up spending the rest of your life" in prison. *Id.* at 6. Petitioner then indicated that he understood everything that defense counsel said. *Id.* at 8.

Petitioner further indicated that he understood specifically that there was no implied or "secret" promise of lesser punishment in the plea agreement, and he also agreed that he could not later raise the claim that he pled guilty because he believed that there was such an implied promise, as he is now claiming herein:

> MR. MINTZ [DEFENSE COUNSEL]: . . . First of all, I want to be sure that you are not doing this because you think there is a secret promise. Ain't no secret deal, no secret deal.
> Here's the problem. You know, you and I have always been straight with each other. I don't want you coming back a year from now and say, "I know Mintz said all that to me on the record in open court, but what he told me in the jail the day before, what he told me in the holding cell was if I plead to 15 to life, I'll get out in four years." No secret deal, right?
> DEFENDANT: No promise to that.
> THE COURT: What did you say, Mr. Gray?
> DEFENDANT: No promise to that.
> MR. MINTZ: I want to be sure that [co-defendant] Joyce hasn't threatened you, Judge Baranco, Mr. Jay [the prosecutor]. Have any threats been made to you or have any threats been made against anyone else in order to get you to enter this plea?
> DEFENDANT: No.

*Id.* at 8.

Petitioner cites to a newspaper article that states that defense counsel had indicated that the plea bargain "will severely limit" his prison time. Pet. at 9; Pet. Ex. 2. The article reveals that this was not a quote from defense counsel, however, but rather the journalist's interpretation of something that defense counsel said. In any event, such a vague

5

statement, even if it had been made by defense counsel, hardly undermines counsel's specific and unequivocal warnings to petitioner at the plea hearing that his early release was merely a possibility, not a guarantee. Petitioner also claims that defense counsel assured him he could "avoid life in prison" if he pled guilty and that he would be "eligible for parole in approximately three years." Pet. at 9. There was nothing false about these statements. Petitioner had the possibility of being released on parole as early as his first parole hearing, which did indeed take place in 1993, approximately three years after his guilty plea. In addition, petitioner claims that counsel said he would receive parole by his third parole hearing and be released from custody in six to ten years. *Id.* The statement to which petitioner refers was an offhand comment made to the court, not to petitioner, as part of counsel's argument at the sentencing that a fine should not be imposed upon petitioner. Pet. Ex. 3 at 4. Counsel in fact stated only that petitioner would "probably" be released from custody in six to ten years, not that such an outcome was assured. *Id.* Moreover, petitioner could not have relied upon this statement in deciding to plead guilty because the statement came at the sentencing hearing, months after petitioner had already pled guilty. *Id.*; Pet. Ex. 3 at 4.

Petitioner also asserts that a promise of early release was implied because at the time of his plea, the average time served in prison for first degree murder at that time was 14 years. Pet. at 9. While such a fact may have influenced petitioner's thinking, it was never cited in the agreement, by the prosecutor, by the judge or by defense counsel as a basis for petitioner's own expectations as to how long he would serve. Petitioner further claims that defense counsel falsely indicated that the Board "shall normally" parole persons convicted of second degree murder, that the different degrees of murder are punished differently, and that the lack of violent or assaultive convictions would weigh in favor of parole. Pet. at 9. These were accurate statements of the applicable California law, however. *See* Cal. Pen. Code §§ 3041(a), 2933, 1170. The fact that the Board has not yet granted petitioner parole does not mean, as petitioner argues, that defense counsel's

statements were false. Finally, petitioner's assertion that he was "virtually assured" of having a parole date set, Pet. at 9, is not supported by the record or any other evidence, and indeed is directly contradicted by the record of what he was told, and what he said he understood, at the plea hearing.

In denying petitioner's habeas petition, the superior court correctly referred to petitioner's statements at the plea hearing at which he clearly indicated that he understood the consequences of his plea, including that his sentence of 15 years to life could result in his spending his entire life in prison and the fact that there were no "secret" promises being made to him of any lesser punishment. Resp. Ex. 3; *see also* Resp. Ex. 7 at 5-8. As described above, the record reveals that defense counsel repeatedly informed petitioner that there was no "promise," implied or otherwise, from defense counsel, the prosecutor, the plea agreement, or the statutes and regulations governing parole that petitioner would ever be paroled. The record further demonstrates that petitioner indicated that he understood this to be true, and that he understood the determination as to whether and when he would be released from parole was solely up to the "parole authorities." Thus, the state court decision was neither contrary to nor an unreasonable application of federal law, and consequently, petitioner is not entitled to habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 2, 2009.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\GRAY394.RUL.wpd

7